## NORMAN et al. v. WILSON.
### No. 7619.

Court of Civil Appeals of Texas. Austin.
July 1, 1931.

Rehearing Denied July 22, 1931.

E. A. Camp, of Rockdale, for appellants.

E. A. Wallace, of Cameron, for appellee.

BAUGH, J.

A. Y. Norman held a judgment for $313 against R. R. Wilson. He sued out a writ of

garnishment against the Rockdale State Bank. The bank answered that it owed Wilson $259, credited to Wilson under an agreement with him that it would not be paid over until Wilson executed to the bank a bond indemnifying it against loss from any other claimant of said fund. It also asked that if said sum be awarded to Norman, he be required to indemnify the Bank against loss; and for costs and attorney's fees.

Wilson intervened and claimed that said fund was exempt from garnishment as proceeds from the sale of a part of his homestead; and (2) that the bank had unlawfully withheld from him the fund involved, alleged that the bank was guilty of conversion of said fund, and asked for judgment against it accordingly.

The trial court held the fund exempt as proceeds from the sale of a part of the homestead; awarded the fund to Wilson, taxed the costs against Norman and the bank and in favor of the bank over against Norman. Norman and the bank have appealed.

█ The contention that said fund was exempt is based upon the following facts: Wilson, along with others, executed an oil and gas lease on his homestead, being a part of a 691-acre drilling block, to T. M. Weathered. These leases were attached to an escrow contract placed in, and accepted in writing by, the Rockdale State Bank. Weathered placed on deposit in said bank $2 per acre on the lands covered by said leases, appellee owning 129 acres of same. The portion of the contract pertinent here provided that if Weathered should begin drilling a well on said block of land within 60 days from the date of the contract, the leases were to be delivered to him; but if he did not do so, then the $2 per acre was to be delivered by the bank to the landowners, and their leases returned to them. Weathered never began drilling such well. The leases were returned to the landowners after the expiration of the 60 days, and each given a deposit slip for his portion of the fund; but in order to protect itself against any claim from Weathered, the bank exacted an agreement from each of said parties to execute to it an indemnity bond before said money would be paid out to the respective depositors. Wilson agreed to this, but before he executed such bond, or attempted to check out or assign said fund deposited to his credit, the writ of garnishment was served upon the bank.

The transactions described did not constitute a sale of any part of the homestead. Had Wilson's lease been delivered to Weathered it would have conveyed an interest in the homestead. If the $2 per acre had been in part payment for said lease, the same result might have obtained. But the consideration for all of said leases was the commencement of a well within 60 days and diligent drilling of same to a depth of 2,000 feet or to paying oil or gas, as provided in the written contract. The $2 per acre was only forfeit money placed in escrow with the lease to guarantee Weathered's performance of his contract, or to be paid to lessors as damages if he failed to do so.

█ It is now well settled that placing a conveyance in escrow to be delivered upon performance by the grantee of certain conditions passes no title to the property until delivered. And the grantee is not entitled to delivery until he has fulfilled the conditions imposed by the escrow agreement. Calhoun County v. American Emigrant Co., 93 U. S. 124, 23 L. Ed. 826; Manton v. San Antonio (Tex. Civ. App.) 207 S. W. 951; Crabb v. Bell (Tex. Civ. App.) 220 S. W. 623; 10 R. C. L. 629. While the grantee may have an equitable interest or title, dependent upon his performance of the condition imposed, where, as in this case, he has never performed his part of the contract, never paid the consideration, and the conveyance has never been delivered, no title passed out of the grantor. The trial court erroneously concluded, therefore, that said fund was proceeds from the sale of a part of Wilson's homestead, and as such exempt from garnishment.

██ Nor did appellee make any proof of conversion of said fund by the bank. There was no showing that the bank at any time claimed the fund itself or sought to pay it over to anyone else. On the other hand, it disclaimed ownership of the fund. Under the express terms of the contract it was the bank's duty to pay over the fund to Wilson when he demanded it. The bank wholly failed to plead or prove any such adverse claimant to the fund as would justify it in withholding the fund from Wilson when he demanded it. When the bank accepted by written indorsement thereon the escrow agreement deposited with it, and which charged it with certain duties, it became the depository and trustee to carry out its terms, and if it improperly did so, would be liable to those injured thereby. 10 R. C. L. 634; 21 C. J. 893. Under the proof before us it improperly withheld Wilson's funds from him. If in fact there was another claimant of that fund, and the bank had reasonable grounds for its conduct in the premises, it should have so shown on the trial. If it did not, the question arises: What was Wilson's injury resulting from the bank's action? Does the fact that a nonexempt fund, improperly withheld by the bank, is impounded by garnishment because of the bank's action, and thus applied to payment of Wilson's debts, instead of being paid over to him, result in any injury to Wilson?

 To the extent that same is used in paying the judgment against him, he was not

injured. But if the bank wrongfully withheld from Wilson his money, and while being so wrongfully withheld same is subjected to a garnishment in its hands by which added expense to him is incurred, and which would not have occurred otherwise, we think such bank should be taxed with the costs of such garnishment proceeding, so far as Wilson is concerned, and that it would not be entitled to any attorney's fees against him. There was no proof, in any event, as to what was a reasonable attorney's fee for the bank in the instant case. The record discloses also that the same attorney who represented Norman also filed the answer for the bank and they prosecute a common appeal. In so far as their interests were conflicting he could not properly be paid a fee by both even though the representation be with the consent of both parties. Bryant v. Lewis (Tex. Civ. App.) 27 S.W.(2d) 604.

For the reasons stated the judgment of the trial court is reversed and the cause remanded. All costs of the appeal incurred by the bank are taxed against it. All other costs are taxed against appellee.

Reversed and remanded.